IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


MICHAEL CRAIG GARRISON,
       Petitioner,

vs.                                 Case No. 3:06cv428/RV/EMT

WARDEN McCRAE,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 12). Petitioner was provided an opportunity to file a reply (*see* Doc. 14), but he declined to do so.

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 12, Exhibits). Petitioner was charged in the Circuit Court in and for Escambia County, Florida, with one count of unlawful sexual activity with a person sixteen or seventeen years of age (Doc. 12, Ex. A at 1, 2). Pursuant to a written plea and sentence recommendation, Petitioner agreed to enter a no contest plea in exchange for the State's agreeing

to recommend a sentence of forty-eight (48) months of probation, with early termination at thirty (30) months if Petitioner complied with all conditions of probation, including no contact with the victim or her family,[1] random urinalysis, payment of enumerated costs, and provision of a DNA sample (*id.* at 18–22, 25–27). A hearing was held on March 3, 2004, at which Petitioner entered his plea and stipulated to the factual basis for the charge as set forth in the arrest report (*id.* at 6–13). Following a plea colloquy, the court accepted the plea, adjudicated Petitioner guilty, and sentenced him according to the plea agreement (*id.* at 6–13, 25–27). Petitioner did not appeal the judgment of conviction and sentence.

On March 29, 2004, Petitioner's probation officer filed a violation report (*id.* at 29–30). At a hearing on May 5, 2004, Petitioner entered a no contest plea to the violation (*id.* at 33–46). The court considered evidence from Petitioner in the form of a letter from his to the court, conducted a plea colloquy, accepted the plea, adjudicated Petitioner guilty, and revoked his probation (*id.* at 33–46, 57). After hearing testimony from the victim, the court sentenced Petitioner to ten (10) years in prison (*id.* at 33–46, 48–53).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"). Petitioner's counsel filed an initial brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that he was unable to argue in good faith that reversible error occurred in the trial court which would support reversal of the conviction or sentence (Doc. 12, Ex. B). Petitioner was given until October 20, 2004, to file a pro se brief (*id.* at 15). Instead of filing a brief within that time, on October 8, 2004, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(B)(2) of the Florida Rules of Criminal Procedure, with the trial court and apparently notified the First DCA of the filing (Doc. 12, Ex. C at 67–77). The trial court dismissed the motion with prejudice on two grounds: (1) Petitioner filed the motion pro se, but the docket reflected he was still represented by counsel, and (2) Petitioner's claim was without merit (*id.* at 78–80). Petitioner then filed a pro se brief with the First DCA challenging both the judgment revoking his probation and the denial of the issue raised in his Rule 3.800 motion (Doc. 12, Ex. D). On April 29, 2005, the First

---

[1]The no contact provision provided that upon the victim's reaching the age of 18 and her supplying written consent to Petitioner's probation officer, the no-contact restriction would be lifted (*see* Doc. 12, Ex. A at 18).

DCA affirmed the revocation and sentence per curiam without written opinion (Doc. 12, Exs. E, F). Garrison v. State, 902 So. 2d 138 (Fla. 1st DCA Apr. 29, 2005) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On June 28, 2005, Petitioner filed a motion to reduce or modify sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Doc. 12, Ex. G at 1–6).  The trial court denied the motion on July 13, 2005 (*id.* at 19).

On July 27, 2005, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 12, Ex. H at 1–11).  The trial court summarily denied the motion on August 8, 2005 (*id.* at 12–32).  Petitioner appealed the judgment to the First DCA; and on November 17, 2005, the appellate court affirmed the judgment per curiam without written opinion, with the mandate issuing December 13, 2005 (Doc. 12, Exs. I, J). Garrison v. State, 916 So. 2d 791 (Fla. 1st DCA Nov. 17, 2005) (Table).

On April 18, 2006, Petitioner filed a petition for writ of habeas corpus with the First DCA alleging ineffective assistance of appellate counsel (Doc. 12, Ex. K).  The First DCA denied the petition on the merits on May 30, 2006 (Doc. 17, Ex. M).  Garrison v. State, 933 So. 2d 575 (Fla. 1st DCA 2006).

Petitioner filed the instant habeas action on September 27, 2006 (Doc. 1 at 6).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this context, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground four:[3] "Defendant was denied effective assistance of trial counsel based on counsel's failure to adequately investigate and know that there was no factual basis in Defendant's case before sentencing in violation of Defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution."

Petitioner contends his trial counsel at the revocation hearing never discussed his case with him, except the few minutes prior to the probation violation hearing (Doc. 1 at 5; Doc. 2 at 9–11). During that discussion, counsel stated there was "not much she could do but hope for a decent plea agreement" (Doc. 1 at 5, attached page).   Petitioner claims that if counsel had adequately investigated the factual basis for the plea, the outcome of the case would have been different (*id.*).

Respondent concedes that Petitioner exhausted this claim by raising it in his Rule 3.850 motion (*see* Doc. 12 at 24).   Respondent contends that Petitioner had no constitutional right to counsel at the revocation hearing; therefore, he cannot obtain federal habeas relief based on a claim of ineffective assistance of counsel at the hearing (*id.* at 24–25).   Furthermore, even if Petitioner had a constitutional right to counsel, Petitioner failed to demonstrate that his counsel performed deficiently or that he was prejudiced by counsel's alleged failure to investigate the factual basis for the violation (*id.* at 25–26).

1.    Clearly Established Federal Law

In Mempa v. Rhay, the Supreme Court held that since sentencing is a state of a criminal prosecution, a defendant has a per se right to appointed counsel at a combined probation revocation and sentencing hearing.  389 U.S. 128, 137, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967).  *Cf.* Gagnon v. Scarpelli, 411 U.S. 778, 781–82, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) (Mempa revocation and sentencing hearing is a stage in a criminal prosecution, but a mere revocation hearing is not); Morrissey v. Brewer, 408 U.S.  471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (same).

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), applies. Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, Petitioner must establish:  (1) that his counsel's representation "fell below an

---

[3]For organizational purposes, the court will address Petitioner's claims in a different order than presented in the habeas petition.

objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 688.

The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances."  <i>Id.</i>  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <i>Id.</i> at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of  unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the  facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann v. Richardson</u>, 397 U.S. 759, 769-70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 690; <i>see also</i> <u>Smith v. Singletary</u>, 170 F.3d 1051, 1053 (11th Cir. 1999); <u>Harich v. Dugger</u>, 844 F.2d 1464, 1469 (11th Cir. 1988); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Indeed, Petitioner must demonstrate that counsel committed "serious derelictions" of his duty.  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. Stano, 921 F.2d at 1152 (citations omitted).

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance. To satisfy this element, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement. *See* Diaz, *supra*; *see also* Toro, *supra*; Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986); United States v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).

    2.  Federal Review of State Court Decision

Initially, the undersigned rejects Respondent's argument that Petitioner did not have a right to appointed counsel at the revocation hearing. The hearing was a combined revocation and sentencing hearing; therefore, under Mempa v. Rhay, *supra*, Petitioner had a right to appointed counsel at the hearing. In light of this conclusion, Petitioner had a Sixth Amendment right to effective assistance of counsel, and whether he received such must be analyzed under the Strickland standard.

Petitioner raised this ineffective assistance of counsel claim as Ground Two in his Rule 3.850 motion (*see* Doc. 12, Ex. H at 8–9). In the state court written opinion denying Petitioner's ineffective assistance of counsel claim, the state court identified Strickland as the applicable legal standard for claims of ineffective assistance of counsel (Doc. 12, Ex. H at 14). Therefore, Petitioner is entitled to federal relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

The state court rejected Petitioner's claim that counsel's failure to investigate rendered his plea involuntary on three grounds. First, Petitioner provided no factual support for his claim, nor

did he include any allegation of positive, specific and factual prejudice (*see* Doc. 12, Ex. H at 14). Second, the transcript of the revocation hearing demonstrated that there was a factual basis for the revocation, that is, that Petitioner had contact with the victim (*id.*). Third, the transcript showed that Petitioner knew he was giving up his right to a contested hearing and his right to require the State to prove the case against him (*id.*). The transcript further demonstrated that Petitioner stated he discussed his case with counsel and was satisfied with her services (*id.* at 14–15). Therefore, the record refuted Petitioner's claim that counsel erred by failing to investigate the factual basis for the revocation, and this error rendered his plea involuntary (*id.*).

Initially, Petitioner failed to allege, in his Rule 3.850 motion or the instant habeas petition, the existence of any evidence that counsel could have discovered and presented at the revocation that was not already presented. Petitioner states that investigation by counsel would have revealed that the violation was not willful, substantial, or his fault (*see* Doc. 2 at 10). However, Petitioner acknowledges that counsel presented testimony from the victim that she, not Petitioner, initiated their contact, and Petitioner asked her to leave, but she refused (*id.*). Furthermore, the transcript of the revocation hearing shows that Petitioner's counsel presented the court with a letter from Petitioner stating his version of the facts, the court read the letter, and counsel questioned Petitioner on the record as to whether he wished to present anything else to the court besides the letter (*see* Doc. 12, Ex. H at 17–18, 21). Petitioner responded "I think that says it all." (*see id.* at 22). Moreover, the violation report filed by Petitioner's probation officer stated that Petitioner admitted the violation (Doc. 12, Ex. A at 29–30). In light of Petitioner's failure to show that investigative efforts by counsel would have revealed any other evidence that could have been presented in defense of the charge, and in light of the undisputed evidence that Petitioner had contact with the victim, Petitioner has failed to demonstrate that counsel's failure to conduct further investigation was unreasonable.

Furthermore, Petitioner failed to present objective evidence that but for counsel's failure to investigate, he would not have entered a no contest plea and would have insisted on proceeding with an evidentiary hearing. The record shows that at the revocation hearing, Petitioner and the judge engaged in the following exchange concerning Petitioner's knowledge of the nature of the charge, his desire to enter a no contest plea, and his knowledge of the consequences of doing so:

THE COURT: Mr. Garrison, please raise your right hand.

(The witness was sworn.)

THE COURT: This is case number 03-5036, unlawful sexual activity with certain minors. Are you aware of this?

THE DEFENDANT: Yes, ma'am.

THE COURT: I'm holding a violation of probation affidavit in my hand regarding your case where you have been charged with having contact with the victim on March 28. Are you aware of that charge as it now stands?

THE DEFENDANT: Yes, ma'am.

THE COURT: My understanding is you are going to plea to this charge by entering such a plea you give up your right to make the state prove their case against you by a preponderance of the evidence in a court of law?

THE DEFENDANT: Yes, ma'am.

THE COURT: Because there won't be any trial, you are giving up your right to put on evidence, to cross examine evidence, to testify, to exercise your right to remain silent and you are giving up your right to appeal?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you have talked with your counsel and I understand that Ms. Nicholas is filling in today. You talked to Mr. Jarvis and understand the pros and cons and any defenses you might have. You have discussed all that over with your counsel?

THE DEFENDANT: Yes, ma'am.

THE COURT: You are entering this freely and voluntarily?

THE DEFENDANT: Yes. They advised me against it.

. . . .

THE COURT: Are you satisfied with the services of your counsel?

THE DEFENDANT: Yes.

. . . .

THE COURT: . . . . you understand that the decision in this case is mine and mine alone as to what your sentence would be?

THE DEFENDANT: I certainly do.

. . . .

THE COURT: Mr. Garrison, you are looking at anywhere from the lowest permissible of 15 months unless I find some way to downward depart or up to 15 years state prison. Are you aware of that?

THE DEFENDANT: Yes, ma'am, I am.

THE COURT: And no one has made any sort of promises as to what the sentence would be?

THE DEFENDANT: No.

THE COURT: With all this in mind, is there—are you planning on pleading guilty to this charge because you are in fact guilty or no contest because it would be in your best interest to do so?

THE DEFENDANT: No contest.

THE COURT: Ms. Nicholas [Petitioner's counsel], do you stipulate to the affidavit and the report?

MS. NICHOLAS: Yes, ma'am.

THE COURT: And I find factual basis for the plea and I accept the plea, adjudication of guilt on the underlying, adjudication of guilt on the violation of probation affidavit.

(Doc. 12, Ex. H at 18–21).

In light Petitioner's sworn statements during the plea colloquy, and Petitioner's failure to show the existence of evidence favorable to the defense that could have been presented by counsel at the revocation hearing but was not, Petitioner failed to satisfy his burden of showing, by objective evidence, that but for counsel's failure to investigate, he would not have entered a no contest plea. Therefore, the state court's determination that Petitioner failed to establish deficient performance or prejudice was not contrary to or an unreasonable application of Strickland.

B.     Ground one: "Whether the court erred in revoking Appellant's probation based on the evidence presented at the violation hearing."

Petitioner contends the greater weight of the evidence at the revocation hearing showed that he made all reasonable attempts to comply with the condition of his probation restricting his contact

with the victim (Doc. 1 at 4, attached page; Doc. 2 at 1–2).  He states the evidence failed to show that he deliberately, intentionally, or willfully violated the provision; rather, the evidence showed that the victim initiated contact with him (*id.*).  Therefore, the trial court violated his rights to due process and equal protection (*id.*).

Respondent concedes Petitioner exhausted this claim by raising it on direct appeal of his revocation conviction (*see* Doc. 12 at 15).  Respondent contends this issue is not cognizable on federal habeas review because the determination of what constitutes a willful and substantial violation of probation is purely a matter of state law (*id.* at 16–17).  Furthermore, the preponderance of the evidence adduced at the revocation hearing, including Petitioner's no contest plea to the violation, proved the violation (*id.* at 17–19).

> 1.      Clearly Established Federal Law

As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  As recognized by the Eleventh Circuit, the Supreme Court has <u>not</u> established that due process in a parole or probation revocation proceeding requires proof beyond a reasonable doubt that the parolee committed the alleged violation.  *See* <u>United States v. Taylor</u>, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation).  Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in probation or parole revocation proceedings to satisfy the Due Process Clause.  *See, e.g.,* <u>Black v. Romano</u>, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed.2d 636 (1985) ("<u>Bearden v. Georgia</u>[, 461 U.S. 660, 666, and n.7, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)] recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution.  We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context."); <u>Douglas v. Buder</u>, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated).  Under Florida law, the trial court is required to determine whether the violation was

willful and substantial and supported by the greater weight of the evidence or, stated differently, whether the probationer made reasonable efforts to comply with the terms and conditions of probation. *See* State v. Carter, 835 So. 2d 259, 262 (Fla. 2002); *see also* Burgin v. State, 623 So. 2d 575, 576 (Fla. 1st DCA 1993) ("A trial court is vested with broad discretion in determining whether a probationer has violated a condition of the probation."). In making this determination, the trial court was required to assess the alleged violation in the context of a defendant's case and consider each violation on a case-by-case basis. Carter, 835 So. 2d 261.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue One on direct appeal of his revocation conviction (*see* Doc. 12, Ex. D at 3–6). The First DCA affirmed the parole revocation without issuing a written opinion. Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

The terms of Petitioner's probation required that he refrain from contact with the victim until she reached the age of 18 and provided to Petitioner's probation officer her written consent to contact with Petitioner (*see* Doc. 12, Ex. A at 10–11, 22, 25–27). At the revocation hearing, Petitioner did not contest the facts set forth in the violation report and the affidavit Charles Botelho, the probation officer; nor did he contest that those facts provided a sufficient basis to revoke his probation (*see id.*, Ex. A at 34–39). The affidavit of Mr. Botelho stated that he and Officer Henry Lewis instructed Petitioner on the conditions of his probation on March 4, 2004 and March 9, 2004 (*id.* at 28). The affidavit further stated that on March 28, 2004, the victim was found in Petitioner's residence (*id.*). According to the violation report, on March 28, 2004 at 5:30 a.m., law enforcement conducted a curfew check at Petitioner's home (*id.* at 29). During the curfew check, the officers conduct a "walk through" and located women's undergarments lying in plain view, as well as women's makeup and personal items in the bathroom (*id.*). The victim was found hiding in a bedroom closet wrapped in a blanket (*id.*). She appeared to have no clothing on under the blanket (*id.*). Also according to the report, Petitioner admitted the violation and stated he was in love with

the victim and wanted to take care of her and their unborn child (*id.*). The victim testified that after Petitioner was placed on probation, she went to his house because she was tired of fighting with her family and felt that she had nowhere else to go (*id.* at 39–40). She testified that she appeared at Petitioner's door soaking wet, and Petitioner asked her to leave, but she wouldn't because she was tired of her family treating her badly, and she wanted to marry Petitioner (*id.* at 40–41).

The affidavit of Mr. Botelho and Petitioner's admission to the probation officer that he violated the no-contact condition provided a sufficient basis for revoking Petitioner's probation. Furthermore, the fact that Petitioner did not initiate the contact with the victim and asked her to leave his residence does not render his conduct in allowing her to stay unwillful. Florida courts have deemed evidence insufficient to show a willful violation where the violation is due to negligence or ineptitude or where a probationer made reasonable efforts to comply with the terms of probation. *See* <u>Michael v. State</u>, 992 So. 2d 367, 368 (Fla. 1st DCA 2008) (probationer did not willfully violate probation condition that required probationer to write letters to credit card companies assuming responsibility for debts he had run up fraudulently on victim's account; assistant state attorney had not furnished names of credit card companies with pertinent account numbers either to probationer or to his probation officer, and probationer sought unsuccessfully to obtain necessary information from probation officer and from probationer's lawyer); <u>Meade v. State</u>, 799 So. 2d 430, 432–33 (Fla. 1st DCA 2001) (evidence that probationer failed to attend two classes because of illness and transportation problems was insufficient to establish willful violation); <u>Padelt v. State</u>, 793 So. 2d 30, 31 (Fla. 2d DCA 2001) (community control revocation was not justified by probationer's brief departure from the drug treatment facility, where probationer did not purposely abscond or leave the treatment program, or otherwise violate conditions of community control but, rather, left the facility out of desire to avoid embarrassment of arrest in presence of other program participants, based on probationer's misunderstanding that he had been discharged from the program); <u>Robinson v. State</u>, 773 So. 2d 566, 567 (Fla. 2d DCA 2000) (evidence of probationer's failure to pay costs of supervision and restitution, in the absence of evidence that he had the ability to pay, was inadequate to prove willful violation); <u>Jones v. State</u>, 730 So. 2d 349, 350 (Fla. 4th DCA 1999) (probationer's failure to obtain consent form from probation officer prior to change of residence was not willful and deliberate act); <u>Garcia v. State</u>, 701 So. 2d 607 (Fla. 2d DCA 1997) (probationer's failure to

attend appointment because he lacked transportation and asked probation officer to reschedule, and probationer's failure to attend two more appointments due to lack of funds to pay attendance fee, indicated that probationer was making reasonable efforts to follow instructions of probation officer); Van Wagner v. State, 677 So. 2d 314 (Fla. 1st DCA 1996) (evidence did not support finding that probationer "willfully" violated probation by failing to provide verifiable residence to first probation officer, and by failing to comply with that officer's instruction to contact second probation officer; although for time probationer had no fixed abode or address to give, he did not withhold information from first officer, probationer made repeated attempts to establish communication with second officer prior to filing of affidavit of violation of probation, it was not shown that probationer made any change of residence without first officer's consent, and probationer's penury, homelessness, and unemployment were not intentional); Thomas v. State, 672 So. 2d 587 (Fla. 4th DCA 1996) (concluding that inept and negligent failure of probationer to return to halfway house on time did not amount to willful violation of probation); Stevens v. State, 599 So. 2d 254 (Fla. 3d DCA 1992) (holding that there was no willful or deliberate violation of probation where probationer was absent from meeting of sex offender program due to inept and negligent conduct); Thorpe v. State, 642 So. 2d 629 (Fla. 1st DCA 1994) (probationer made reasonable efforts to comply with condition of probation requiring that she transfer condominium to victim as restitution where probationer attempted to transfer title to condominium and offered to pay cash over period of time to cure any deficiency in equity, but victim rejected offer); Shaw v. State, 391 So. 2d 754 (Fla. 5th DCA 1980) (no willful violation of condition requiring personal delivery of a report when timely completed report was not delivered because of probationer's lack of transportation and subsequent incarceration for an unrelated offense); Gardner v. State, 365 So. 2d 1053 (Fla. 4th DCA 1978) (no willful violation of condition that probationer leave Florida proven, because his car broke down).

In the instant case, the evidence showed that Petitioner's violation was knowing and willful. Petitioner knew that he was not to have contact with the victim and, despite this knowledge, the victim was with him in his home. In light of this evidence, and the absence of any evidence that Petitioner's contact with the victim was due to his negligence or ineptitude or that he made a reasonable attempt to avoid contact with the victim (simply asking her to leave his doorstep, without more, was not a reasonable effort to terminate contact), Petitioner failed to show that there was

insufficient evidence that the violation was knowing and willful.  *See* Brown v. State, 949 So. 2d 1085 (Fla. 5th DCA 2007) (evidence supported finding that defendant's possession of three disks, that were of an obscene or pornographic nature, was a willful and substantial violation of probation condition that required him to refrain from possessing any obscene, pornographic, or sexually stimulating visual or auditory material, and was a proper ground for revoking probation imposed for sexual battery; while testimony was given that the disks, which were found under defendant's bed, belonged to defendant's son, defendant failed to properly dispose of them).  Furthermore, the trial court was aware, through the testimony of victim, that Petitioner did not initiate the contact and asked her to leave when she appeared at his door, but this was obviously insufficient to overcome the court's firmly held opinion that the nature of Petitioner's conviction and the nature of the violation rendered the violation substantial, not merely technical.  Therefore, Petitioner failed to demonstrate that the state court's denial of his due process claim was contrary to or an unreasonable application of Supreme Court law.  Accordingly, he is not entitled to federal habeas relief on this claim.

  C. Ground three:  "Defendant's sentence should be ruled illegal and in violation of constitutional provisions in that an independent determination of fact used to enhance Defendant's sentence precluded a jury's evaluation."

  Petitioner claims that the sentencing court made an independent determination of fact, that is, that Petitioner was a "predator," and that factual determination led to a sentence "beyond the range already imposed by the court" without a jury's determination of that fact (Doc. 1 at 5, continuation page; Doc. 2 at 7–9).

  Respondent concedes that Petitioner exhausted this claim by raising it in his Rule 3.850 motion (*see* Doc. 12 at 21).  Respondent contends Petitioner's claim is without merit because his sentence did not exceed the statutory maximum; therefore, it did not violate the principles set forth in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (*id.* at 21–23).  Furthermore, Petitioner was designated a sexual offender, not a sexual predator, and that designation is not a sentence enhancement, it is a status that requires him to report his address and other information to the state and local authorities when he is released from prison (*id.* at 22–23).

1.      Clearly Established Federal Law

In Apprendi v. New Jersey, the Supreme Court held that "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  Apprendi involved a New Jersey hate-crime statute that authorized a 20-year sentence, despite the usual 10-year maximum, if the judge found the crime to have been committed "'with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" 530 U.S. at 468–69 (quoting N.J. Stat. Ann. § 2C:44-3(e) (West Supp.1999–2000)).  In Ring v. Arizona, 536 U.S. 584, 592–93, and n.1, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), the Supreme Court applied Apprendi to an Arizona law that authorized the death penalty if the judge found one of ten aggravating factors.  In each case, the Court concluded that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding, and the challenged finding had not been made by a jury beyond a reasonable doubt.  Apprendi, *supra*, 530 U.S. at 491–97; Ring, *supra*, 536 U.S. at 603–09.

In Blakely v. Washington, the defendant pleaded guilty to kidnaping his estranged wife.  542 U.S. at 303–04.  The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months, but the judge imposed a 90-month sentence after finding that the defendant had acted with deliberate cruelty, a statutorily enumerated ground for departing from the standard range.  *Id.* The Court clarified that "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts.  Blakely, 542 U.S. at 303–04.  Applying Apprendi, the Court invalidated Blakely's sentence because the facts supporting his exceptional sentence were neither admitted by him nor found by a jury, therefore, the sentence violated his Sixth Amendment right to trial by jury.  *Id.* at 313–14.

2.      Federal Review of State Court Decision

In the state court's written opinion denying Petitioner's Rule 3.850 motion, the state court identified Apprendi and Blakely as setting forth the controlling legal standard for analyzing sentencing claims of this nature (Doc. 12, Ex. H at 12).  The state court determined that under state

law, the crime of unlawful sexual activity with certain minors is a second degree felony (*id.* at 12–13). The court additionally determined that Petitioner's ten year sentence was less than the statutory maximum for a second degree felony under the Florida Criminal Punishment Code ("CPC") (*id.*). Therefore, Petitioner failed to demonstrate his sentence violated the constitutional principles set forth in Apprendi and Blakely (*id.*).

Because the state court correctly identified Apprendi and Blakely as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts, or the decision was an unreasonable application of that precedent. The state court record demonstrates that Petitioner was adjudicated guilty of unlawful sexual activity with certain minors, a violation of Florida Statues section 794.05 (Doc. 12, Ex. A at 48). Section 794.05 specifically provides that the crime is a second degree felony punishable by a maximum term of imprisonment of fifteen (15) years. Fla. Stat. §§ 794.05, 775.082(c). Petitioner's CPC scoresheet indicated a sentencing range from a minimum non-state prison sanction to a maximum of fifteen (15) years in prison, which was the statutory maximum for Petitioner's offense (Doc. 12, Ex. K at 116–18). Petitioner's sentence of ten (10) years in prison did not exceed the statutory maximum.

Furthermore, Petitioner has failed to demonstrate that his sentence was increased based upon a finding that he was a sexual predator or offender. Petitioner identifies the following comment by the sentencing judge as evidence that his sentence was increased based upon her finding him a sexual predator:

> You are 30 or 31 and you are having sex with a 15-year-old. You are a grown man and quite frankly, you are a predator because you may love her and she loves you, but quite frankly, I don't think either one of you know what true love is.
>
> The bottom line is you are supposed to know better. It is by law you are told no. I told you no at the bond hearing. I told you no at the plea agreement [sic]. You can came [sic] into this fully understanding exactly what you were doing and so it is a matter of choice. It is absolutely a matter of choice. You are a grown man and I'm sorry she had a bad childhood situation. There are other avenues besides sleeping with somebody to alleviate their bad home situation.
>
> I'm going to revoke your home probation and sentence you to 10 years with 143 days credit.

Case No. 3:06cv428/RV/EMT

(Doc. 12, Ex. A at 44–45) (emphasis added). Petitioner has failed to establish that the sentencing court's reference to him as a predator constituted a finding of fact which increased his sentence. Moreover, although Petitioner's offense qualifies him for designation as a sexual offender, *see* Fla. Stat. § 943.0435(1)(a)1.a., that designation is a status that requires an offender to report his residence and other identifying information to the local sheriff's office upon his release and change in residence, and report to the Florida Department of Highway Safety and Motor Vehicles. *See* Fla. Stat. § 943.0435(2–4). The sexual offender statute does not provide for any sentence enhancements based upon a defendant's designation as such.

Petitioner failed to show that his sentence was increased beyond the statutory maximum based upon a fact that was not presented to a jury for determination beyond a reasonable doubt. Therefore, he has failed to show that the state court's denial of his claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable applications of Apprendi and its progeny.

D. Ground two: "Whether trial court erred in summary dismissal of Appellant's 3.800(b) motion filed pro se during pendency of appeal, in which he challenged the constitutionality of the Florida Criminal Punishment Code (CPC)."

Petitioner states he was proceeding pro se on direct appeal of his revocation conviction, and that status extended to the Rule 3.800(b)(2) proceeding in the trial court, which he initiated during the pendency of his direct appeal, in which he challenged Florida's sentencing scheme as violating the constitutional principles set forth in Blakely v. Washington (Doc. 1 at 4, attached page; Doc. 2 at 3–6). In the written order denying Petitioner's Rule 3.800(b)(2) motion, the trial court dismissed the motion as a "nullity" on the ground that the trial court record indicated that Petitioner was represented by counsel, and Florida law provided that a pro se motion filed by a party who is represented by counsel is a nullity and without legal force and effect (Doc. 12, Ex. C at 78). The court then went on to determine that Petitioner's Blakely claim was without merit and, therefore, dismissed the motion with prejudice (*id.* at 78–80).

Respondent concedes that Petitioner exhausted this claim by raising it on direct appeal of his revocation conviction (*see* Doc. 12 at 19). Respondent contends that this claim is not cognizable

in federal habeas because it is a challenge to a proceeding collateral to his conviction and not the detention itself (*id.* at 19–20).

Initially, to the extent Petitioner challenges the review process afforded him in the Rule 3.800 proceeding, this ground for relief does not state a claim cognizable on federal habeas. It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief"). Because Petitioner's claim appears to challenge only the process afforded him in the state collateral review proceedings and does not represent a constitutional challenge to Petitioner's confinement, it does not provide a basis for federal habeas relief.

Additionally, to the extent Petitioner challenges the state court's adjudication of the merits of his Blakely claim, he has failed to show that the adjudication was contrary to or an unreasonable application of Supreme Court law. In the written order rejecting the merits of Petitioner's claim, the state court identified Blakely and Apprendi as the applicable legal standard to sentencing challenges such as Petitioner's (*see* Doc. 12, Ex. C at 78–79). The court denied Petitioner's claim on the ground that Petitioner's sentence was below his maximum sentence under the Florida Criminal Punishment Code and below the statutory maximum for second degree felonies set forth in Florida Statutes Sections 794.05 and 775.082(c) (*id.*).

Because the state court correctly identified Apprendi and Blakely as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts, or the decision was an unreasonable

application of that precedent. As previously discussed in Ground three, Petitioner failed to show that his sentence was increased beyond the statutory maximum based upon a fact that was not presented to a jury for determination beyond a reasonable doubt. Petitioner's CPC scoresheet indicated a sentencing range from a minimum non-state prison sanction to a maximum of fifteen (15) years in prison, which was the statutory maximum for Petitioner's offense (Doc. 12, Ex. K at 116–18). Petitioner's sentence of ten (10) years in prison did not exceed the statutory maximum. Therefore, he has failed to show that the state court's denial of his claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable applications of Apprendi or Blakely.

      E.     Ground five:  "Appellate counsel was ineffective in that he failed to raise a fundamental error issue of vindictive sentencing in which he was put on notice of."

Petitioner contends appellate counsel failed to raise the issue of vindictive sentencing on appeal even though Petitioner notified him in writing that he wished to raise this issue (Doc. 1, continuation page; Doc. 2 at 11–14). Petitioner contends counsel's failure to raise this issue and instead filing an Anders brief denied him fair review of the issue and led him to believe that the issue did not warrant review by the appellate court, thereby causing him to omit the issue from his pro se brief (*id.*).

Respondent concedes Petitioner exhausted this claim by raising it in his state habeas petition (Doc. 12 at 26–27).

      1.     Clearly Established Supreme Court Law

The proper standard for evaluating a claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See* Smith v. Robbins, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citing Smith v. Murray, 477 U.S. 527, 535–36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (applying Strickland to claim of attorney error on appeal)). The habeas petitioner must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. *Id.* (citing Strickland, 466 U.S. at 687–91). If the petitioner succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable

probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. *Id.* at 286 (citing <u>Strickland</u>, 466 U.S. at 694 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different")).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Claim 1 in his state habeas petition (Doc. 12, Ex. K at 13–25). The First DCA issued an opinion stating that the petition was denied on the merits (Doc. 12, Ex. M). Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* <u>Helton</u>, 233 F.3d at 1326–27; <u>Delgado</u>, 223 F.3d at 982; <u>Hannon</u>, 109 F.3d at 335. In the instant case, Petitioner has failed to show that the state court decision was clearly contrary to or an unreasonable application of <u>Strickland</u>.

The Eleventh Circuit has issued several decisions interpreting the <u>Strickland</u> standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. <u>Atkins v. Singletary</u>, 965 F.2d 952, 957 (11th Cir. 1992); <u>Francois v. Wainwright</u>, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. <u>Nyhuis</u>, 211 F.3d at 1344 (citing <u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988)).

In the instant case, Petitioner's claim of vindictive sentencing is reasonably considered to be without merit. In his brief to the First DCA, Petitioner argued that the following circumstances demonstrated that his sentence was presumptively and actually vindictive: (1) the same judge advocated the plea and imposed his original sentence and his revocation sentence; (2) the disparity between his original sentence and his revocation sentence, that is, four years of probation versus

ten years in prison, is great; (3) no sanctions, injunctions, or any other safeguards were provided to ensure Petitioner's equal protection; (4) during the "resentencing," the judge relied solely on evidence adduced at earlier hearings and not on Petitioner's conduct that occurred after the original sentencing; (5) the comments made by the judge, followed by the sentence imposed in accordance with those comments, showed vindictiveness even though the sentence was within the guidelines range; (6) the "obvious sentencing goal" of not only the State but the trial court; and (7) the absence of any evidence to support the greater sentence, or even an attempt to explain or justify the greater sentence (Doc. 12, Ex. K at 13–25, 67–68).

It is well established that an accused may not be subjected to more severe punishment for exercising his constitutional right, whether it is the constitutional right to appeal his conviction or sentence, *see* North Carolina v. Pearce, 395 U.S. 711, 723–24, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), or the constitutional right to stand trial, *see* United States v. Jackson, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968); Wilson v. State, 845 So. 2d 142 (Fla. 2003). In the instant case, however, Petitioner identified no constitutional right that he was allegedly punished for exercising. This is not a case where Petitioner was retried upon successfully exercising his right to appeal his original conviction or sentence, nor is this a case where Petitioner rejected a plea offer and exercised his right to a hearing on the revocation issue. Therefore, Petitioner failed to show that any state or federal precedent concerning vindictive sentencing is applicable to his case.

Additionally, an examination of the record convinces the undersigned that nothing the state judge said or did indicated any bias against Petitioner or resulted in a vindictive sentence. Initially, there is no evidence that the judge participated in any way in the original plea negotiations, and there is no evidence that any plea negotiations occurred in the violation proceedings. Furthermore, the probation violation sentence was not vindictive simply because it exceeded Petitioner's original sentence, especially in light of the fact that the court could have imposed a term of imprisonment of fifteen years, but imposed only a ten year term. Moreover, the judge's comments upon imposing sentence at the revocation hearing show that the judge relied upon Petitioner's conduct that occurred after the original sentencing, specifically, his violating the no-contact condition within one month of imposition of the probationary sentence (*see* Doc. 12, Ex. A at 42–45), and this evidence justified a more severe sentence than his original sentence.

Petitioner failed to show that appellate counsel's failure to raise the issue was unreasonable. Additionally, he failed to show a reasonable probability that he would have prevailed on appeal if counsel had raised this issue on appeal.  Therefore, the First DCA's denial of this claim was not contrary to or an unreasonable application of <u>Strickland</u>.

      F.    <u>Ground six: "Appellate counsel was ineffective in that he failed to raise trial court's abuse of discretion in accepting Petitioner's best interest plea once a defense was presented."</u>

Petitioner contends appellate counsel should have argued on appeal that the trial court committed fundamental error by accepting Petitioner's plea after a "viable defense" to the violation was presented to the court, namely, the victim's testimony that she initiated contact with Petitioner, and she refused to leave his doorstep despite Petitioner's request that she do so (Doc. 1, continuation page; Doc. 2 at 14–18).  Petitioner asserts counsel's failure to raise the issue denied him fair review, and if counsel had raised the issue, the outcome of his appeal would have been favorable (*id.*).

Respondent concedes Petitioner exhausted this claim by raising it in his state habeas petition (Doc. 12 at 30).

      1.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of appellate counsel was set forth *supra*.

      2.    Federal Review of State Court Decision

Petitioner raised this claim as Claim 2 in his state habeas petition (Doc. 12, Ex. K at 25–29). As previously noted, the First DCA denied the petition on the merits (Doc. 12, Ex. M).

As discussed in Ground one, *supra*, the evidence presented at the revocation hearing, including the undisputed facts set forth in the probation officer's affidavit and Petitioner's admission to the violation, provided a sufficient factual and legal basis for revoking Petitioner's probation, even in light of the victim's statement that she initiated the contact and refused Petitioner's request to leave his residence.  Therefore, appellate counsel's failure to argue that the trial court committed fundamental error by accepting Petitioner's plea was not unreasonable.

Furthermore, there is no reasonable probability that Petitioner would have prevailed on appeal if counsel had argued that the trial court erred by accepting Petitioner's no contest plea in light of the victim's statements at the hearing.  Despite Petitioner's contention to the contrary, the

victim's testimony that she initiated the contact with Petitioner and refused Petitioner's request to leave his doorstep did not provide a viable defense to the violation.  As discussed in Ground one, the evidence showed that Petitioner's violation was knowing and willful.  Petitioner knew that he was not to have contact with the victim and, despite this knowledge, he allowed her into his home.  The fact that Petitioner initially asked her to leave was not a reasonable attempt to avoid contact with her.  Therefore, the state court's denial of Petitioner's claim of ineffective assistance of appellate counsel was not contrary to or an unreasonable application of Strickland.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 18th day of August 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**